# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

WISSAM HAMMO,

    *Plaintiff*,

v.                                      CASE NO. 11-CV-13745

COMMISSIONER OF               DISTRICT JUDGE ROBERT H. CLELAND
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 12.)

Plaintiff was 29 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 28, 109, 116.)[2] Plaintiff's employment history includes three years working on an assembly line and three years as a self-employed delivery truck driver. (Tr. at 135.) Plaintiff filed the instant claims on September 18, 2009, alleging that he became unable to work on July 24, 2009. (Tr. at 109, 116.) The claims were denied at the initial administrative stages. (Tr. at 67, 68.) In denying Plaintiff's claims, the Commissioner considered late effect of musculoski and connective tissue injuries and affective disorders as possible bases for disability. (*Id.*) On January 4, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Paul R. Armstrong, who considered the application for benefits *de novo*. (Tr. at 8-22; 26-52.) Although Plaintiff was advised of his right to representation, he chose to appear and testify without the assistance of an attorney or other representative. (Tr. at 11.) An Arabic interpreter was utilized since Plaintiff's English skills are limited. (Tr. at 28-29.) In a decision dated February 23, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 22.) Plaintiff requested a review of this decision on March 3, 2011. (Tr. at 4-6.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 27, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On August 26, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2] Plaintiff had previously applied for and was denied benefits. As discussed below, ALJ E. Patrick Golden's decision, which was affirmed by the Appeals Council, is *res judicata* as to the issue of whether Plaintiff was disabled as of May 23, 2003, the date of ALJ Golden's decision. (Tr. at 58-66.)

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

## D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2011, and that Plaintiff had not engaged in substantial gainful activity since July 24, 2009, the alleged onset date. (Tr. at 13.) At step two, the ALJ found that Plaintiff's right leg above-knee amputation, vertigo, and anxiety were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 14-15.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 21.) The ALJ also found that on the alleged disability onset date, Plaintiff was a younger individual – age 18 to 44. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 15-21.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 22.)

## E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was born and raised in Iraq and was forced to join the army at age 14. He served until he was 16, when he was treated for a gunshot wound to his right leg that eventually resulted in his leg being amputated above the knee in 2002. (Tr. at 163, 213.) Plaintiff moved to the United States in 1999. (Tr. at 213.)

In his daily activity report, Plaintiff's stated reason as to why he stopped working was that he "was robbed in December 2008 and [he] was too paranoid to keep working [because he] was always looking for someone else who was going to shoot [him]." (Tr. at 135.) During the administrative hearing, Plaintiff testified that he left his job "because of the prosthetic leg that I use." (Tr. at 33.)

An x-ray of Plaintiff's chest taken on September 26, 2008 was "normal." (Tr. at 260.)

Plaintiff was examined by Disability Determination Services ("DDS") physician Nick Boneff, Ph.D., and Julia Czarnecki, M.A., L.L.P., on November 9, 2009. (Tr. at 213-16.) Although Plaintiff "has never had any formal psychiatric treatment, counseling or therapy . . . [h]e reports that he is primarily depressed because of sudden onset pain with his prosthesis and vertigo and inability to support his wife and newborn baby." (Tr. at 213.) Plaintiff was diagnosed with adjustment reaction, disturbance of mood, was assessed with a GAF score of 55, and given a guarded prognosis "based on medical condition." (Tr. at 215.)

Plaintiff was also examined by DDS physician E. Montasir, M.D., on November 9, 2009. (Tr. at 219-21.) Dr. Montasir noted that Plaintiff was "having difficulty walking with the prosthesis" and that he had "some arthritic changes in the left lower extremity, secondary to favoring." (Tr. at 220.) Dr. Montasir noted that the "stump of the right thigh has darkened in color and has tenderness at the tip with some bony prominence, which makes it difficult to fit in the prosthesis, which is eight years old." (*Id.*) However, Dr. Montasir also noted that there "was no evidence of acute inflammation or erythema." (*Id.*) Dr. Montasir concluded that Plaintiff "would be suitable to work in a seated position mainly" and would "have extreme difficulty climbing stairs, ropes, ladders and scaffolding." (Tr. at 221.)

A Psychiatric Review Technique completed on November 18, 2009, diagnosed Plaintiff with affective disorders, i.e., adjustment reaction and disturbed mood, both of which were "not severe." (Tr. at 223, 226, 235.) Plaintiff was found to have no limitations in his activities of daily living or in maintaining social functioning, and had only mild limitation is his ability to maintain concentration, persistence or pace. (Tr. at 233.) Plaintiff was found to be "partially credible" and "capable of at least simple unskilled work activity on a sustained basis." (Tr. at 235.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on November 19, 2009, concluded that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand or walk for at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in his ability to push or pull. (Tr. at 238.) Since there was "no new/material evidence to alter previous ALJ determination[,]" the "ALJ determination of 5/23/03 [was] adopted." (*Id.*) It was also concluded that Plaintiff should never climb and should only occasionally be required to perform any other postural positions. (Tr. at 239.) There were no manipulative, visual, communicative or environmental limitations established. (Tr. at 240-41.) Plaintiff's statements were found to be "mostly credible." (Tr. at 242.)

An MRI of Plaintiff's brain taken on February 26, 2010, showed "no acute intracranial process." (Tr. at 252, 257.)

On January 4, 2011, Ramiz Putrus, M.D., noted that due to his amputation "causing pres[s]ure to the left leg and causing low back pain, [Plaintiff] is currently taking Naproxin." (Tr. at 287.)

In his daily activity report, Plaintiff stated that he was able to attend to his own personal care but that his wife helps him dress and that he does not bathe every day because of pain. (Tr. at 158.) Plaintiff also stated that he is able to drive and ride in a car, shop in stores for one to two hours, and handle his finances. (Tr. at 160.) Plaintiff also indicated that he can walk about half a mile before needing to stop and rest for approximately five to ten minutes. (Tr. at 162.)

Plaintiff testified at the administrative hearing that because his leg prosthesis was causing his skin to be inflamed from overuse, he had to stop doing the truck delivery work. (Tr. at 34.) When asked whether he owned his own truck to make deliveries, Plaintiff answered "yes" and his wife answered "no." (Tr. at 35.) Plaintiff stated that he hired someone else to work on the truck

9

and that after his worker was paid, Plaintiff did not make any money from the business. (Tr. at 36.) Plaintiff indicated that he was still able to drive a car, but stated that he cannot use his prosthetic leg at all which makes it impossible to drive the truck. (Tr. at 36-37.) Plaintiff's wife testified that "[w]hen we go to Walmart, he walks like – we usually shop for about a half hour" and "then he complains about pain." (Tr. at 37.) Plaintiff confirmed that he is able to walk for half an hour to an hour as long as he can use a shopping cart to help support himself. (Tr. at 37-38.) When asked why Plaintiff had not sought a new prosthesis, Plaintiff responded that his doctor "had already taken the measurements and is having [him] trained on using a new one," but that "it's very difficult to just switch from prosthetic to the new one, because you have to get used to it." (Tr. at 37-38.) When asked whether he has the new prosthesis, Plaintiff responded that he did but that he has not gotten used to it yet. (Tr. at 38.) Plaintiff further testified that his doctor "said to wear it as much as possible. Wear it a lot." (Tr. at 42.) Plaintiff also testified that the medication he takes for vertigo or dizziness helps sometimes but sometimes it does not. (Tr. at 40.) Plaintiff testified that he also has back pain due to his limping. (Tr. at 43.) Plaintiff stated that he attended school through the twelfth grade in Iraq and that "[w]hen [he] first arrived in this country [he] used to go to school just to learn English." (Tr. at 43-44.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background:

> who doesn't speak English very well and who is limited to sedentary work – that's sit down work. No work climbing ropes, ladders, scaffolds or stairs or ramps. Also limited in – he's got no – he can't do public contact work because both of the language problem and the – his fear because of robbery.

(Tr. at 45.) The VE testified that such a person could not perform Plaintiff's past relevant work but that such a person could perform the following jobs at the sedentary level that are available in the City of Detroit and the five surrounding counties: 3,250 assembler, 3,250 hand packager, and 1,500

10

visual inspector sorter jobs. (Tr. at 44-45.) When asked whether a person who could only stand for 15 minutes in an eight-hour job could still perform the jobs, the VE testified that in the above jobs, a person "can sit all day." (Tr. at 46.)

## F. Analysis and Conclusions

### 1. Legal Standards

"No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . . ." 42 U.S.C. § 405(h). As a result, a claimant's subsequent application for benefits may be barred by the doctrine of *res judicata*, where the Commissioner has made a final decision or determination on the claimant's rights to benefits based upon the same facts and issues. 20 C.F.R. § 404.957(c)(1).

In this circuit, if a claimant does not appeal an adverse disability determination, nondisability as of the date of decision is established as a matter of *res judicata*. *Carver v. Sec'y of Health & Human Servs.*, 869 F.2d 289 (6th Cir. 1989); *Wills v. Sec'y of Health & Human Servs.*, 802 F.2d 870, 871 n.2 (6th Cir. 1986); *Gibson v. Sec'y of Health & Human Servs.*, 678 F.2d 653, 654 (6th Cir. 1982). *See also Spaulding v. Comm'r of Soc. Sec.*, No. 08-5447, 2009 WL 361397 (6th Cir. Feb. 12, 2009). Therefore, ALJ E. Patrick Golden's decision, which was affirmed by the Appeals Council, is *res judicata* as to the issue of whether Plaintiff was disabled as of May 23, 2003, the date of ALJ Golden's decision. (Tr. at 58-66.)

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 15-21.)Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job

duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ "should have looked at my facts before his ruling of DENIAL," which I conclude is in effect an argument that the decision is not supported by substantial evidence. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

While Plaintiff's wartime injuries are truly traumatic, and with permanent effects, there is simply no medical evidence of record that would support a finding that sedentary work cannot be performed, in other words, there is no medical evidence of a disabling condition. The record instead reveals that Plaintiff needed, and by the administrative hearing had received, a new prosthesis. However, even with a less than ideal prosthesis, the medical evidence showed that

Plaintiff was "suitable to work in a seated position mainly." (Tr. at 221.) As to psychiatric issues caused by his physical impairment, Plaintiff was also found to be "capable of at least simple unskilled work activity on a sustained basis." (Tr. at 235.)

Plaintiff was never treated in any fashion for psychiatric issues, and Plaintiff's treatment for physical issues was limited to adjustments of his prosthesis and prescription medicine to help with his vertigo and the undocumented back pain he experienced. (Tr. at 139, 140-43, 202-04, 225.) Such modest treatment is inconsistent with a finding of disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007) (modest treatment regimen is inconsistent with a finding of total disability).

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that he is able to drive and ride in a car, shop in stores for one to two hours, handle finances, and walk about a half mile before needing to stop and rest for five to ten minutes. (Tr. at 37-38, 158-62.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  | s/ **Charles E Binder** |
|---|---|
|  | CHARLES E. BINDER |
| Dated: April 5, 2012 | United States Magistrate Judge |

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and on the following non-ECF participant via the United States Postal Service: Wissam Hammo 35353 Dunston Dr., Sterling Heights, Michigan 48310.

| Date: April 5, 2012 | By   s/Patricia T. Morris |
|---|---|
|  | Law Clerk to Magistrate Judge Binder |